## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

FARADAY CAPITAL LTD.; and
NAVIGATORS CORPORATE
UNDERWRITERS LTD.,

        Plaintiffs,

v.

BILLY'S MEXICAN GRILL AND Q, LLC
D/B/A AYR LANES BOWLING CENTER,

        Defendant.

Case No.: _____

## COMPLAINT FOR DECLARATORY JUDGMENT

COME NOW Faraday Capital Limited ("Faraday") and Navigators Corporate Underwriters Limited ("Navigators") (collectively, "Underwriters"), by and through their undersigned counsel, and hereby file this, their Complaint for Declaratory Judgment, against Billy's Mexican Grill and Q, LLC d/b/a AYR Lanes Bowling Center ("Ayr Lanes"), seeking a declaration that no coverage exists for a claim made against a commercial property insurance policy issued to Ayr Lanes.

## INTRODUCTION

1.     Underwriters seek a declaration that Ayr Lanes is precluded from recovering under the subject policy because of (1) the applicability of the policy's exclusion for pre-existing damage; (2) the applicability of the policy's exclusion for construction defect and defective construction materials; and (3) Ayr Lane's failure to provide Underwriters with prompt notice of the subject loss, a condition precedent to recovery under the policy.

## I.     THE PARTIES

2.     Faraday is a foreign entity organized under the laws of England and Wales with its principal place of business located at The Corn Exchange, 55 Mark Lane, London EC3R 7NE,

England. Faraday is an underwriter of the insurance policy at issue. Faraday is a citizen of the United Kingdom. Faraday has over $75,000 at stake in connection with the amount insured under the insurance policy at issue.

3.      Navigators is a foreign entity organized under the laws of England and Wales with its principal place of business located at 6 Bevis Marks, 8th Floor, Bury Court, London EC3A 7AB, England. Navigators is an underwriter of the insurance policy at issue. Navigators is a citizen of the United Kingdom. Navigators has over $75,000 at stake in connection with the amount insured under the insurance policy at issue.

4.      Ayr Lanes is a limited liability company organized under the laws of the State of Kansas with its principal place of business at 2050 N. Kansas Ave., Liberal, KS 67901.

5.      Ayr Lanes is a citizen of Kansas because, according to Ayr Lane's most recent annual report on file with the office of the Kansas Secretary of State, each of its four named members are individuals who are all citizens of Kansas. A true and accurate copy of this annual report is attached hereto as Exhibit A ("Ex. A").

## II.      JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because there is complete diversity of citizenship between Underwriters and Ayr Lanes and the amount in controversy exceeds $75,000.

7.      This Court has personal jurisdiction over Ayr Lanes because Ayr Lanes is a citizen of Kansas.

8.      Venue in this District is proper under 28 U.S.C. § 1391(b)(1) and (2) because Ayr Lanes is deemed to reside in Kansas and because the events giving rise to the claim occurred in Kansas.

9.     By filing this Complaint in this Court, Underwriters avail themselves of the Court's jurisdiction and venue

10.    An actual case and controversy of a justiciable nature exists between Underwriters and Ayr Lanes regarding their duties, rights, and obligations, if any, under the subject insurance policy. Underwriters are, therefore, entitled to bring this declaratory judgment action in this Court pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

### III.     THE UNDERLYING FACTS

**A.     The Policy**

11.    This matter arises out of a commercial property insurance policy, policy number P06647/20116 issued to Ayr Lanes to which Underwriters subscribe (the "Policy"). A true and accurate copy of the Policy is attached hereto as Exhibit B ("Ex. B").

12.    The Policy term was April 1, 2016, through April 1, 2017.

13.    The Policy provided certain property coverage to Ayr Lane's facility located at 2050 N. Kansas Ave., Liberal, KS 67901 (the "Property") and Ayr Lane's business personal property located therein, subject to the Policy's exclusions, conditions, and limitations.

14.    The Policy states that Underwriters "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." Ex. B, at CP 00 10 10 12, p. 1 of 16.

15.    In turn, the Policy defines a "Covered Cause of Loss" as a "direct physical loss unless the loss is excluded or limited in" the Policy. Ex. B, at CP 10 30 10 12, p. 1 of

16.    The Policy has the following relevant limits of liability: $3,000,000 (Building – RCV) and $300,000 (contents), subject to a $2,500 deductible for non-wind/hail claims and a $25,000 deductible for wind/hail claims.

3

**B.**     **The Property and Claims History**

17.     The Property operated by Ayr Lanes is a bowling alley and attached restaurant. The bowling center is a large masonry structure that was constructed in 1955. The restaurant was added in 2015.

18.     On May 25, 2015, prior to the Policy's inception and when the Property was covered under a different insurance policy issued by Houston Casualty Company ("HCC"), the Property's roof was damaged during a severe hail storm and was declared a total loss.

19.     As a result of this damage, in the fall of 2015, Ayr Lanes retained Border to Border Roofing Company ("Border") to remove the old roof and install a new flat modified bitumen roof.

20.     Border began work in late September 2015, and on October 1, 2015, after Border had installed part of the new roof, another storm passed through the area. Rain entered the Property through the roof and caused extensive damage.

21.     Ayr Lanes submitted a claim to Colony Insurance Company ("Colony"), Border's liability carrier. Colony accepted responsibility for the interior damage. Ayr Lanes provided Colony with an estimate of $868,176.90 on a replacement cost value ("RCV") basis for the damages to the Property and certain property inside. This report was prepared by National ConnectForce Claims ("ConnectForce"), an independent adjuster retained by HCC.

22.     Colony offered Ayr Lanes $420,002.19, the actual cash value ("ACV") of the costs to repair the damages, less a $300,000 settlement Ayr Lanes had previously reached with a subcontractor Border used to install the new roof. After learning that Colony would only pay the ACV of the cost of repairs, Ayr Lanes elected to seek coverage for the claim from its then-property insurer, HCC.

23.     In July 2016, HCC issued Ayr Lanes a check for $682,920.42 to resolve the claim arising from the October 1, 2015 water intrusion event. This was based on the RCV estimate of the damages plus a $25,000 business interruption advancement, less recoverable depreciation of $40,286.89, the coinsurance penalty of $8,278.90, the deductible of $1,000, and $160,690.69 from the prior settlement with Border's subcontractor (the amount of the settlement that did not go towards Ayr Lane's new roof).

24.     On February 26, 2016, at HCC's request, ConnectForce inspected the new roof installed on the Property by Border. ConnectForce's inspection revealed multiple issues arising from a poor installation job by Border, which resulted in multiple areas through which water could leak into the interior of the Property. Upon receipt of ConnectForce's report, HCC advised Ayr Lanes that its policy would not be renewed unless the Property's roof was replaced.

25.     On April 1, 2016, coverage for the Property under the Policy issued by Underwriters to Ayr Lanes commenced.

26.     In early June 2016, Ayr Lanes retained Rugged Roofing Company ("Rugged") to remove the modified bitumen flat roof installed by Border and to replace it with a new fully-adhered thermoplastic polyolefin membrane roof.

27.     During the night of June 13, 2016—by which point Rugged had replaced about half of the roof installed by Border—another storm passed through the area. This storm had reported wind gusts of up to 60 MPH and brought rainfall of 1.65 inches.

28.     On the morning of June 14, 2016, Ayr Lane's employees discovered extensive water damage throughout the interior of the Property.

29.     On June 14, 2016, Ayr Lanes reported the damage to its retail agent (and, in apparent confusion as to its role, Ayr Lanes also notified ConnectForce), and ConnectForce

5

inspected the Property on June 17, 2016, apparently at the request of HCC's third-party administrator. Ayr Lanes also retained a remediation service to address the water damage.

30.     Underwriters did not receive notice of the June 13, 2016 incident from Ayr Lane's retail agent until on or about June 16, 2016, by which time Rugged had completed its replacement of the Property's roof.

31.     ConnectForce opined that new damage resulting from the June 13, 2016 incident included: additional damage to the Property's 24 bowling lanes and pinsetter machines ($484,130.70); additional damage to the Property's electrical system ($57,210.00); damage to interior walkways 1 and 2 and the office area ($10,480.80); remediation costs ($8,864.08); and damaged computers ($7,700.00).

32.     On September 19, 2017, counsel for Underwriters took an examination under oath of Ayr Lane's corporate representative, who stated that Ayr Lanes did not dispute the conclusions reached by ConnectForce as the additional damage caused by the June 13, 2016 storm and the costs to repair said damage.

33.     On July 27, 2016, Underwriters' third-party administrator, Nixon & Company, sent a reservation of rights letter to Ayr Lane on Underwriters' behalf, highlighting several potential coverage issues, including various loss conditions, excluded causes of loss, and limitations on coverage for damage to the interior of the Property. Nixon sent Ayr Lanes a supplementary reservation of rights letter on August 15, 2016. True and accurate copies of these letters are attached hereto as Exhibit C ("Ex. C").

## COUNT I – DECLARATORY JUDGMENT

## COVERAGE IS PRECLUDED OR LIMITED BY THE PRE-EXISTING DAMAGE EXCLUSION

34.     Underwriters re-allege each and every allegation contained in paragraphs 1-33 as though fully set forth herein.

35.     The Policy contains the following Pre-Existing Damage Exclusion:

> Notwithstanding any provisions to the contrary within this Policy or any endorsements thereto, it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any interest insured hereunder where such interest has pre-existing damage, at the inception date of this insurance, and is considered by the underwriters to be exposed to conditions which would not have been exposed had the previous loss not occurred.

> In the event an insured loss to any interest insured hereunder where such interest has pre-existing damage, at the inception date of this insurance, then necessary deduction shall be made to the indemnity hereon.

Ex. B at LMA3100 15 September 2010.

36.     As explained above, Ayr Lanes retained Rugged in June 2016 to replace the roof installed by Border in 2015 because the roof installed by Border was damaged and defective.

37.     To the extent the subject loss was caused by water intrusion through the section of the roof installed by Border in 2015 that had not yet been replaced, the loss therefore resulted from the pre-existing damage to the Property itself, as the roof was defective and improperly installed.

38.     The damage to the roof due to Border's work preceded the Policy's effective date of April 1, 2016.

39.     If not for the pre-existing damage to the Property in the form of Border's defective roof, the loss stemming from the June 13, 2016 storm would not have occurred.

40.     Thus, no coverage exists under the Policy due to the Pre-Existing Damage Exclusion.

41.     Accordingly, Underwriters are entitled to a declaration that they owe no duty to provide any coverage or issue any payments to Ayr Lanes for the claim submitted under the Policy due to the Pre-Existing Damage Exclusion.

## COUNT II – DECLARATORY JUDGMENT
### COVERAGE IS PRECLUDED OR LIMITED BY THE CONSTRUCTION DEFECT EXCLUSION AND THE DEFECTIVE CONSTRUCTION MATERIALS EXCLUSION

42.     Underwriters re-allege each and every allegation contained in paragraphs 1-41 as though fully set forth herein.

43.     The Policy provides, in relevant part, that:

> We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3. c.** But, if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.
>
> * * *
>
> **c.**  Faulty, inadequate or defective:
>
>>   (1)  Planning, zoning, development, surveying, siting;
>>
>>   (2)  Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
>>
>>   (3)  Materials used in repair, construction, renovation or remodeling; or
>>
>>   (4)  Maintenance;
>
> of part or all of any property on or off the described premises.

Ex. A, at CP 10 30 10 12, p. 4 of 10.

44.     To the extent the subject loss was caused by Rugged's faulty, inadequate or defective construction of the Property's new roof, or Rugged's use of faulty, inadequate or defective materials in its construction work, these exclusions bar coverage.

45.     Moreover, the Policy also provides, in relevant part, that:

## C. Limitations

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

**1.** We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

\* \* \*

**c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**(2)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

Ex. B, at CP 10 30 10 12, p. 6 of 10.

46.     Rain was the cause of loss for the incident that occurred on June 13, 2016.

47.     Coverage for damages caused by faulty workmanship and use of faulty construction materials are excluded under the Policy, so they cannot constitute a Covered Cause of Loss for the purposes of this limitation.

48.     Thus, coverage is not owed under the Policy for all damage to the Property and the business personal property of Ayr Lanes caused by the rain that entered through the roof due to faulty workmanship and/or the use of faulty construction materials.

49.     Accordingly, Underwriters are entitled to a declaration that they owe no duty to provide any coverage or issue any payments to Ayr Lanes for the claim submitted under the Policy

due to the exclusions for faulty construction work and faulty construction materials as well as the

limitation that rain damage to the interior be a product of a Covered Cause of Loss.

## COUNT III – DECLARATORY JUDGMENT
## COVERAGE IS PRECLUDED OR LIMITED BY AYR LANE'S FAILURE TO SATIFY THE PROMPT NOTICE CONDITION OF THE POLICY

50.     Underwriters re-allege each and every allegation contained in paragraphs 1-49 as

though fully set forth herein.

51.     The Policy provides, in relevant part, that:

3.  Duties In The Event of Loss Or Damage

a. You must see that the following are done in the event of loss or damage to Covered Property:
    * * *
(2) Give us prompt notice of the loss or damage. Include a description of the property involved.
(3) As soon as possible, give us a description of how, when or where the loss or damage occurred.
(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

    * * *
(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Ex. B at CP 00 10 10 12, pp. 10–11 of 16.

52.     The subject loss occurred on or about June 13, 2016.

53.     Underwriters first received notice of the loss on or about June 16, 2016.

54.     In the time between the loss and Underwriters' receipt of notice thereof, Rugged

was able to complete its replacement of the new roof on the Property.

10

55.     As a result, Underwriters were denied the opportunity to inspect the Property in its condition at the time of loss and determine for themselves the cause of said loss.

56.     Underwriters have therefore suffered substantial, actual prejudice as a result of Ayr Lane's failure to give them prompt notice of the loss.

57.     Under Kansas law, untimely notice that causes substantial, actual prejudice to an insurer is sufficient to relieve an insurer of its obligations to provide coverage.

58.     Underwriters' Policy is clear that Ayr Lane's provision of prompt notice was a condition to any purposed coverage obligation by Underwriters.

59.     Accordingly, Underwriters are entitled to a declaration that they owe no duty to provide any coverage or issue any payments to Ayr Lanes for the claim submitted under the Policy due to Ayr Lane's failure to provide Underwriters with prompt notice of the subject loss, as required by the Policy.

**WHEREFORE**, Underwriters pray for judgment:

a.     That the Court declare that coverage under the Policy is precluded by the Pre-Existing Damage Exclusion;

b.     That the Court declare that coverage under the Policy is precluded by the exclusions for faulty construction work and faulty construction materials, as well as the limitation that rain damage to the interior be a product of a Covered Cause of Loss;

c.     That the Court declare that coverage under the Policy is precluded by Ayr Lane's failure to give Underwriters prompt notice as required by the Policy;

d.     That the Court enter judgment in favor of Underwriters and against Ayr Lanes on any and all grounds set forth in this Complaint; and

      e.      That the Court award Underwriters such other and further relief as the Court may deem just and proper.

      Respectfully submitted, this 27th day of February 2018.

| | |
|---|---|
| **SHOOK, HARDY & BACON LLP**<br>2555 Grand Blvd.<br>Kansas City, MO 64108<br>Telephone: (816) 474-6550<br>Facsimile: (816) 421-5547<br>Email:  jartman@shb.com | */s/ Jennifer Artman*<br>Jennifer J. Artman<br>D. Kan. Bar No. 78451 |

AND

| | |
|---|---|
| **FIELDS HOWELL LLP**<br>1800 W. Peachtree Street, Suite 1600<br>Atlanta, GA 30309<br>Telephone: (404) 214-1252<br>Facsimile: (404) 214-1251<br>Email:  pfields@fieldshowell.com<br>Email:  akirk@fieldshowell.com<br>Email:  callen@fieldshowell.com | */s/ Paul L. Fields, Jr.*<br>Paul L. Fields, Jr.<br>Georgia Bar No. 003420<br>*(pro hace vice application pending)*<br>Ann T. Kirk<br>Georgia Bar No.: 101047<br>*(pro hace vice application pending)*<br>Crighton Allen<br>Georgia Bar No. 513249<br>*(pro hace vice application pending)*<br><br>***Counsel for Plaintiffs*** |